14-0329, which is Shamar's scale. I represent the appellant here in this matter, Mr. Scales. This case involves fundamental principles of the Constitution, primarily the 14th Amendment, which the United States Supreme Court interpreted in In Re Winship as requiring that every crime be proved by a jury. And, of course, the law states that deference should be given to fact-finders regarding their factual conclusions. However, the case law is equally clear that reviewing courts are not to be rubber stamps of such conclusions, and, indeed, if such conclusions require the adaptation of a narrative that violates the laws of nature, or contrary to universal law, the court should be given to fact-finders. In the case of sexual assault cases, in which there is no human experience, the court is charged with reversing such cases. This is true of sexual assault cases in every criminal case, such as the case here. What happened was, in a thumbnail rendition, is that Ms. Marshall, the alleged victim, stated that she was partying with a group of individuals, she came home, and she was not intoxicated, and went to sleep. She also said that she has no sleep disorder. She then indicated that, for a period of either 2 to 15 minutes, she was raped. Also, before this rape occurred, her pants were pulled down, and she was digitally stimulated by the accused, Mr. Scales. So, I put forth that such testimony is inherently implausible, that she wouldn't know for a period of 15 minutes that she was being sexually assaulted. However, another problem is that, if her story is true, and she didn't know she was being sexually assaulted for such a period of time, how then could she give a version of events where she tells how long it took place? In other words, at either version of events that you take, that role you go down, you have to accept a narration that includes rules that are contrary to human experience, or conclusions, rather, that are contrary to human experience, or those of physics. Yes, we can conclude and give deference to the finder of fact, but we can't conclude that they're correct if they say circles are squares and squares are circles. Courts can take judicial notice of claims that violate the laws of human experience, and I cited one case in particular, People v. Yager, in my brief, in which the defendants were alleged to have ejaculated a number of times within a limited number of... An amount of times within a period of time that it was impossible, or at least that violated the laws of human experience. Also, what needs careful consideration here is the sentencing, and I think what you should consider before venturing into it is a statement by the appellate court that frames all of the issues. And that is, the defendant in this case had asked for mercy, both from him and from God. In response, the court said, until you realize what you did, how you did, and why you did it, you are going nowhere but to hell. Young man, you have not accepted one bit of responsibility for this. Now sit down, I'm done listening to you. Okay, such a claim or statement is improper and reversible for a number of reasons, because it's playing the card that the judge is expecting him to confess, which the courts have universally held. A defendant does not have to confess, and he cannot be punished for not confessing and sentencing in order to preserve his constitutional right to appeal, as well as to not break faith with any claims he may later have in a post-conviction claim. And what evidence was it that he potentially, that he did punish the accused here, the judge, that is? Well, he was given a sentence that was nearly the maximum, even though he was relatively young, he was only 22 at the time of sentencing. He had only one, he had one instance of resisting criminal arrest, other than that he had no criminal experience, and he was also attending classes at a local community college. Therefore, the judge gave this person a sentence that was no different or a little different from someone who was a hardened criminal, and didn't have a lion's share of his life ahead of him, and was making no efforts that could be construed as rehabilitative. That is the evidence that the judge punished him for not confessing, and also, it also was in smacks of vengeance, which the case law also universally rejects. The defendant, I'm sorry, the state has said that the defendant was not really that young, he's not a teenager, he's 22. Well, perhaps it's showing my age, but I think 22 is pretty young myself. He still has, statistically speaking, the lion's share of his life left over. I also wanted to briefly touch on a couple of cases that the defendant has, I'm sorry, the state has relied upon, primarily cases in which consent was considered given in the court cases. The court relies on, I'm sorry, the state relies on People v. Fisher, which it devotes nearly two pages worth in its brief. All of these cases, however, involve people, do not involve people that were sober. The defendant, as I mentioned before, I'm sorry, the accused, as I mentioned before, is sober. She claimed to be sober. Sober. Right. Not intoxicated. She admitted to drinking an entire bottle of wine and at least some shots before that, as I recall. She did. Yeah. She said she ate and when she went to bed she was sober. So you have to ask yourself, what is she lying about? Is she lying about being sober or is she lying about being aware of what happened when she was sleeping? Either way, she's not telling the truth about something that's very important to the case here, the narrative here. I mean, the cases that I saw that you had cited generally had to do with the question of whether or not there had been an intercourse at all. And that's not in dispute in this case, correct? The cases I cited to Yeager and Anderson and indeed the Illinois Supreme Court case I started out with, People v. Colson, the dispositive issue was whether the facts being told were against the laws of human nature that were just inherently implausible. Whether force was applied or not, as the State put in their response brief, is not relevant to the rule in that law. It's not relevant to that black eye law. Well, force is not an issue in this case because he was charged with whether or not she was able to give knowing consent, correct? True. But force is not put in as far as proving that he forcibly raped her. There's two provisions, as you're aware of, that you can bring a sexual assault complaint under. And this is just that he did not realize that she gave consent. However, I think the narrative that she... When you say just, I'm not sure what that implies, though. Well, perhaps the phrase just was inept. I'm just saying the difference between the two provisions is that in one it's whether consent is given and in the other there's additional element of force. And the problem here is not whether or not force was applied. The problem is that her story is inherently implausible. And in order to get to a guilty verdict, you have to discount something she's saying, which requires you to believe that she's lying about something. And not something ancillary, something that goes to the very heart of her narrative. And in such circumstances, courts are charged with the obligation of reversing the case. Well, what about the court's discretion and ability to discern credibility? That's true. And as I mentioned... You can finish your point. The exception to that rule is when the plaintiff, the victim, tells a story that is inherently implausible or against the laws of human nature. And that is in the United States Supreme Court, Sudan People v. Colson. And all of the cases that I cite in my brief also indicate that. Thank you. Thank you, Your Honor. My name is Sharon Shanahan, and I represent the people of the state of Illinois. I'd like to focus primarily on the defendant's reply brief, since it has several claims in it that the State has not yet had the opportunity to respond to. Obviously, if the Court has any other questions, I'd be glad to answer those, too. I'd like to first address the standard of review cited in the defendant's reply brief, and as far as the sufficiency of the evidence. The defendant claims that People v. Felucci, which is a 1962 Illinois Supreme Court case, establishes the standard of review. In Felucci, the victim let the defendant into her house. The defendant was a friend and co-worker of her husband. She was clad in pajamas. The opinion notes that the pajamas were made of rayon and were at least to some extent transparent, and apparently these pajamas were fairly old because there was a hole in the crotch. Now, clearly, this woman was asking to be raped, right? Well, that's pretty much what the Felucci Court said. Felucci said that there was a special standard of review for rape cases, that a court of review was especially charged with the duty of carefully examining the evidence in rape cases, and that the duty of the reviewing court was to not only consider the evidence carefully, but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged. Now, Felucci predates Jackson v. Virginia and People v. Collins, which established one standard for sufficiency of the evidence, not one standard for rape cases and another standard for all other cases. Several cases since Felucci have distinguished, or since Jackson v. Virginia and Collins, have distinguished Felucci on that basis. There are some cases that actually have followed Felucci, even post-Jackson, but those cases simply ignore Jackson and Collins and seem stuck in the all-too-prevalent mindset of the time that a woman can ask to be raped by the way she dresses or something like that. I mean, hashtag me too? This is simply not the standard of review any longer. The second issue I'd like to address is the sentencing. Now, as the State conceded in its brief, the trial court does lack the authority to enhance the sentence by eternal damnation. In his reply brief, the defendant says that the State has engaged in a straw man argument by casting his opening brief as an assertion that a trial court may not punish a defendant with eternal damnation. Well, here is exactly how the defendant wrote his statement of the issue. The trial court impermissibly enhanced Mr. Scales' sentence by eternal damnation if Mr. Scales did not disavow his steadfast belief of innocence. He goes on to refer to the trial court's eternal damnation remark and he accuses the State of revisioning this trial court's eternal damnation remark. So it doesn't sound like a straw man to me. But this court did not ask the defendant to disavow his belief in his innocence. What bothered the court in this case was that the defendant refused to take any responsibility for what happened that night. He told the defendant that if he didn't want to accept the jury's verdict, that was fine. But he shouldn't go on blaming the victim. The defendant asked the trial court, please have mercy on my soul. My life is in your hands and my almighty savior. The trial court responded that the defendant's life was in his own hands and until he took responsibility for his own actions, he was going to know where but hell because you have not accepted one bit of responsibility for this. So contrary to the claimant defendant's reply brief, you can take responsibility for something without disavowing your innocence. Defense counsel in closing argument agreed that the defendant's actions clearly had an impact on the victim. Even if the victim's brother said that he took responsibility for not doing a better job of protecting his little sister, the defendant in this case didn't even apologize. Even if it's an apology for I'm sorry if you misconstrued my actions, he blamed her all the way through, even in his allocation. Now, another thing I'd like to address is that the state noted that the trial court could take, could consider a nollicross sexual assault case in determining the defendant's sentence. How close was that to this incident, the nollicross? Quite. Years or fairly close? Fairly close. It's my recollection that it was very close. In the reply brief, the defendant says it's obvious that a charge of wrongdoing without an accompanying conviction cannot be considered as an aggravating factor, and that's simply not true. In People v. Jackson, the Illinois Supreme Court noted that while past, criminal conduct is often not admissible at trial, it is relevant information at sentencing. Because we have no idea that the court, we have no way of knowing whether or not the court considered that as an aggravation. Do we? It was admitted, it was argued, and we have, I think there is a presumption that if something is argued to a court in sentencing, that it considers that evidence an aggravation. I'm sorry, I interrupted you. That's all right. You're citing a case. That's your job. I was just going to say Jackson says that outstanding indictments for other criminal conduct for which there has been no prosecution may be considered at sentencing. So the state addressed the other factors that support this sentence in its answer brief, and we'll stand on the argument there for any other thing. I'd like to next talk about defendants' claim that the victim's testimony was contrary to logic as well as the laws of human nature and experience. His argument is based on basically two things. One is he argues that no one could sleep through these initial phases of intercourse. He also argued a lot for this court here today that she was sober, and unless you were not sober or you had had a sleep disorder, you could not sleep through the initial phases of intercourse. Justice Chappell, as you noted, this young woman had a lot to drink that day. She had several shots of tequila. She had some champagne and an entire bottle of wine. She did say that she believed she was sober when she got home, but she had also noted that a lot of people think they're sober when they're not. She pointed out people who agree to take field sobriety tests when they're driving a car because they think they're sober and they're not. So I think she qualifies her answer by believing that she, I think a reasonable interpretation for the jury to have made is that she was not falling down drunk. She was not tipsy, but I think it's reasonable to believe that she was still feeling some effects of the alcohol. Furthermore, she'd been partying and then she went to work and then she partied some more, and that's a hard day. It's not surprising that she slept very soundly and did not wake up quickly. She also agreed that it took her a couple of minutes to realize that this wasn't a dream. Here's something I never thought I'd be saying in an appellate court, but we all know about wet dreams. You can be feeling sexually aroused and still be asleep. I think the defendant suggested that there was an upward of 15 minutes. Wasn't that his testimony? Exactly, Your Honor. The defendant testified at 15 minutes and when she spoke on rebuttal, defense counsel asked her, well, the defendant says it was 15 minutes, and she says, I don't know. I was asleep. It might have been. That's where the 15 minutes came from. Thank you, Your Honor. Thank you. Thank you. The law finding. Okay. The state opened up their argument by talking about the standard of review, and I will argue, even though the state acknowledged that some courts have adopted the standard of review I mentioned in my reply brief and applied it even after the new precedent that she said universally to reasonable doubt cases. It's really of no consequence because I'm not relying on the standard of review here for a conviction reversal. I'm relying on the black letter law put down by our Supreme Court that says if something, if testimony is inherently implausible and violates the laws of universal human experience, then it should be reversed. And that is true, and the Supreme Court said that in the context of a robbery case. It wasn't even in the context of a sexual assault case. As an advocate, I, of course, have to put forth the standard of review that I think best favors my client, but under the one mentioned in my reply brief or under the traditional, or the one that's more often applied right now, I still think the same result obtains. Also, the black letter law that says review in courts are not rubber stamped in such circumstances also applies. So the question is still the same. Is her testimony inherently implausible? You'll have to ask yourself whether it is or not. I put forth that as counsel said, introduced the possibility of a wet dream. Well, it wasn't just the intercourse that she doesn't apparently not become aware of. It was having her pants taken off and also being digitally stimulated, and then having vaginal intercourse for up to 15 minutes. It's true that she said it's possible. She wasn't certain if it was 15 minutes, but she did unequivocally say earlier two or five minutes at least. I put forth that that's not believable. She also said, she brought forth a quote from the judge stating that it's, it was really about not taking responsibility for his actions. Well, this too just applies simple logic. How does the defendant take responsibility for the act he says he doesn't, do not commit? And to do so would, as our courts have said, would potentially frustrate any attempts he has for a direct appeal or post-conviction case. I do believe that the court's, I'm sorry, the state's reference to the quote is a revisioning. And regardless of what I say it says or what she said or what the state says it means, the words are right there for your own interpretation. And I don't think it leaves any doubt. It says, the judge says, you are going to hell unless you realize what you did, how you did it, and why you did it. Explain to me how he could answer those questions without a confession of guilt. He simply cannot. There is no logical way, unless you engage in what one of my favorite authors, C.S. Lewis, says, linguistic gymnastics. There is no way to interpret that, those two sentences, those three sentences, without coming to a conclusion that he would have to confess his guilt to satisfy the judge's claim or requirements. And then counsel talked about how she equivocated when she said she was drunk or not. I would say that based on, if you take her testimony as a whole, she did not equivocate. Because she did say earlier in the day that she was in fact tipsy. Here she said she was sober. And she explained why she was sober. She said she was sober because she went and had food. Now, either she, so the amount of equivocation or the proclivity to equivocate, as the state suggests, is not there if you look at her testimony as a whole. She knows how to be very specific in regards to her levels of intoxication, because it showed she so testified earlier when she said she was tipsy. So I don't think that her, that analysis obtains here regarding equivocation. In conclusion, Shakespeare once said, something smells in Denmark. I think the narrative here told by the victim is worse than a smell. It's a terrible smell, and I think it needs to be reversed. Thank you. Thank you.